**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

THE RABCO CORPORATION,

        Plaintiff,

v.                                                              Case No:  6:16-cv-1858-Orl-40KRS

STEELE PLAZA, LLC,

        Defendant.

_____/

## ORDER

This cause comes before the Court on the following:

1.  Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 15), filed January 3, 2017;

2.  Magistrate Judge Karla R. Spaulding's Report & Recommendation ("R&R") (Doc. 37), filed July 13, 2017;

3.  Defendant's Objection to the R&R (Doc. 43), filed August 17, 2017;

4.  Plaintiff's Objection to the R&R (Doc. 45), filed August 17, 2017; and

5.  Defendant's Response to Plaintiff's Objection to the R&R (Doc. 48), filed August 31, 2017.

Upon consideration, Defendant's motion to dismiss will be granted.

## I.  BACKGROUND

The Rabco Corporation ("Rabco") is a Florida corporation with its principal place of business in Winter Garden, Florida. (Doc. 12, ¶ 2). Rabco is also registered with the Washington Secretary of State to do business in Washington. (Doc. 15-1, pp. 2, 7). Steele Plaza, LLC ("Steele") is a Washington LLC with its principal place of business in

Lakewood, Washington. (Doc. 12, ¶ 4). The membership of Steele is comprised of Bruce Bodine, Debbie Bodine, and Bodine Investments, LLC ("BI"). (*Id.*) Bruce and Debbie Bodine are citizens of Washington; BI is organized under Delaware law and registered as a foreign LLC in Washington. (*Id.* ¶ 5–6).

In 2015, Bruce Bodine attended a trade show in Las Vegas, Nevada, where he solicited bids from metal building contractors to construct a building on Steele's property in Tacoma, Washington. (Doc. 15-1, ¶ 3). Rabco submitted the winning bid, and, after negotiations, entered into a contract (hereinafter the "Contract") with Steele to construct the building. (Doc. 15-1; Doc. 24-1, p. 31). Construction in Washington began approximately in the summer of 2016. (Doc. 15-1, ¶ 5). Soon thereafter, the relationship between Rabco and Steele soured, leading Steele to stop paying Rabco's invoices and Rabco to halt construction and refuse to continue. (*Id.* ¶ 7; Doc. 24-2, ¶ 18). Rabco avers that it is entitled to the payment of $305,712.05 for labor, services, and materials furnished under the Contract. (Doc. 24-2, ¶ 17).

On October 25, 2016, Rabco initiated this suit, alleging that "Steele Street, LLC" (as opposed to Steele Plaza, LLC) breached the Contract between the parties by failing to make contractual payments. (Docs. 1, 12). Steele thereafter filed a breach of contract suit against Rabco in the Western District of Washington based on the same dispute. *Steele Plaza, LLC v. The Rabco Corporation*, No. 3:16-cv-5955-BHS (W.D. Wash.). Next, Rabco filed an amended complaint in this case correcting the name of the Defendant to Steele Plaza. (Doc. 12). Then, on June 9, 2017, Rabco filed a third suit in Washington state court alleging breach of the same contract. *Rabco Enterprises, LLC (f/k/a The*

*Rabco Corporation) v. Steele Plaza, LLC*, No. 17-2-08566-4 (Pierce Co. Sup. Ct., Wash.); (Doc. 43-1).

On January 3, 2017, Steele filed a motion to dismiss in this case, which Rabco opposed. (Docs. 15, 24). On July 13, 2017, Magistrate Judge Spaulding submitted a R&R recommending the Court grant Steele's motion to dismiss. (Doc. 37). Both parties filed objections to the R&R. (Docs. 43, 45).

Because the parties only object to the legal conclusions reached by the Magistrate Judge in the R&R (Docs. 43, 45) and do not assert factual objections, the Court adopts the more complete background set forth in the R&R to decide the motion to dismiss. Plaintiff, Rabco, objects to the R&R's main finding that the Defendant, Steele, lacks sufficient minimum contacts with Florida to satisfy the Due Process Clause of the Fourteenth Amendment. (Doc. 45). Steele objects to the Magistrate Judge's alternative finding that, assuming the Court finds sufficient minimum contacts between Steele and Florida, exercising personal jurisdiction over Steele would not offend traditional notions of fair play and substantial justice. (Doc. 43). The Court agrees with Magistrate Judge Spaulding's main finding that Steele lacks sufficient minimum contacts with Florida to support personal jurisdiction, thus (1) Rabco's objection (Doc. 45) is overruled; and (2) Steele's objection to the R&R (Doc. 43) is moot.

## II.    STANDARD OF REVIEW

When a magistrate judge has been designated to decide a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying proposed findings of fact and the recommended disposition. Fed. R. Civ. P. 72(b)(1). Any party who disagrees with the magistrate judge's decision has fourteen days from the date

of the decision to seek the district judge's review by filing objections to those specific portions of the decision with which the party disagrees. Fed. R. Civ. P. 72(b)(2). The district judge must then make a *de novo* determination of each issue to which objection is made. Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (per curiam). The district judge may then accept, reject, or modify the magistrate judge's recommendation, receive additional evidence or briefing from the parties, or return the matter to the magistrate judge for further review. Fed. R. Civ. P. 72(b)(3).

## III.   DISCUSSION

Magistrate Judge Spaulding set forth the framework a federal court must analyze to determine whether it has personal jurisdiction over a nonresident defendant:

> For a district court to have personal jurisdiction over a nonresident defendant: (1) the forum state's long-arm statute must provide a basis for exercising jurisdiction; and (2) exercising jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

(Doc. 37, p. 7). Magistrate Judge Spaulding found that Steele's purported actions—namely, its alleged breach of contract—fell within the purview of one of the specific jurisdiction prongs of Florida's long-arm statute.[1] *See* Fla. Stat. § 48.193(1)(a)(7).

---

[1] Florida's long-arm statute provides for jurisdiction in Florida courts, as well as federal district courts, over nonresident defendants who commit certain acts. Fla. Stat. § 48.193. The statute provides for both general and specific jurisdiction. "Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.27 (11th Cir. 2009)). General jurisdiction, however, may be present even if the activity supporting jurisdiction is unrelated to the cause of action. A nonresident defendant may

However, the Magistrate Judge also found that exercising jurisdiction over Steele would violate the Due Process Clause. (Doc. 37, p. 16). Steele's Objection to the R&R only challenges this portion of the Magistrate Judge's recommendation. (Doc. 45, p. 2).

For the exercise of jurisdiction to comport with due process, "minimum contacts" must exist between Steele and Florida, and exercising jurisdiction must not offend "traditional notions of fair play and substantial justice." *PVC Windoors*, 598 F.3d at 807. In the R&R, Magistrate Judge Spaulding found that minimum contacts did not exist between Steele and Florida to support personal jurisdiction, and therefore recommended that Steele's motion to dismiss be granted. (Doc. 37, p. 16).

To decide whether sufficient minimum contacts exist between a nonresident defendant and forum, the Court must find that the defendant "purposefully directed" its activities toward the forum.[2] *Burger King v. Rudzewicz*, 471 U.S. 475, 482 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). A defendant purposefully directs its activities to toward a forum when there is "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474–75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Purposeful availment is not present where the defendant's contacts with the forum are "random," "fortuitous," or "attenuated." *Id.* at 475 (citations omitted). "[U]nilateral activity" of a third party cannot suffice to establish

---

be subject to general jurisdiction for engaging in "substantial and not isolated activity" in Florida. Fla. Stat. § 48.193(2).

[2] The litigation must also be substantially related to the defendant's activities directed toward the forum. *Id.* In this case, the parties "agree that all of Steele Plaza's alleged contacts with the State of Florida . . . relate to Rabco's breach of contract claim." (Doc. 37, p. 10 n.8).

minimum contacts; rather, the inquiry turns on whether actions of "the defendant *himself*" created a substantial connection with the forum state. *Id.* (citations omitted).

In its Response to Steele's motion to dismiss, Rabco argued that the following contacts arising out of the Contract satisfied the "minimum contacts" requirement: (1) Steele reached out to Rabco, a Florida firm, to negotiate and eventually form a contract; (2) Steele sent several payments under the Contract, totaling $410,191.20, to Florida; (3) Steele breached the Contract in Florida by failing to deliver payments to Rabco's address in Florida; (4) Steele sent numerous emails directing construction activities to Rabco and Robert M. Beattie, P.E.[3] in Florida; and (5) part of Rabco's performance under the Contract took place in Florida. (Doc. 24).

A.    **Rabco's Objections to the R&R**

Rabco advances several arguments in support of its objection to Magistrate Judge Spaulding's central finding that Steele lacked sufficient minimum contacts with Florida to satisfy the Due Process Clause of the Fourteenth Amendment. The Court addresses each in turn.

1.    *Rabco's Relationship with Design Engineer*

Magistrate Judge Spaulding recommended the Court find that Steele lacks sufficient contacts with Florida. (Doc. 37, p. 11). In reaching this conclusion, the Magistrate Judge recommended that the Court not consider Steele's communications to Beattie in its minimum contacts analysis. (*Id.* at p. 12). The Magistrate Judge noted that

---

[3] Robert M. Beattie ("Beattie") is the manager of RBE Consulting Services, LLC ("RBE"). (Doc. 37, p. 4). RBE has only one office, located in Oviedo, Florida. (*Id.*). Rabco engaged RBE to design the components and structure for the project. (*Id.*). Rabco also engaged Beattie, who is a licensed engineer in both Florida and Washington, to serve as the engineer of record for the project and approve plans. (*Id.*).

Rabco had discretion to subcontract any of its duties under the Contract, and Rabco independently hired Beattie and his firm. Rabco could have employed an engineer located in any state. Thus, Rabco's unilateral decision to subcontract engineering work to a Florida firm does not equate to Steele purposefully directing its activities toward Florida simply because Steele communicated with Beattie after he was hired.

In its Objection to the R&R, Rabco argues that Magistrate Judge Spaulding erred by "construing as a unilateral and happenstance act of Rabco, the selection and involvement of a local engineering consultant, and failing to consider Steele's ongoing contact with, and direction and control of Rabco's local design professional as ratification of that selection." (Doc. 45, p. 2). In support, it cites the nature of the business, whereby "Rabco must necessarily maintain regular and ongoing relationships with engineers," and characterizes the design engineer as akin to a direct employee of Rabco. (*Id.* at p. 6).

Rabco also distinguishes its own selection of an engineer-subcontractor from the facts of *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), arguing that its selection of Beattie was unlike the situation presented in that case. (*Id.* at p. 2). In *Helicopteros*, the Court considered whether a nonresident defendant's receipt of checks drawn on a Texas bank bore on a minimum contacts analysis involving the defendant. 466 U.S. at 416. The Court held that the checks drawn on a Texas bank were of "negligible significance" to a minimum contacts analysis because a third party unilaterally selected the bank on which the checks were drawn, and such a selection is "generally of little consequence to the payee and is a matter left to the discretion of the drawer." *Id.* at 416–17.

7

Although the facts of *Helicopteros* are distinct from the facts of this case, the principle applies. Rabco's discretionary, unilateral actions do not support a finding that *Steele* purposefully directed its conduct toward Florida. *See Burger King*, 471 U.S. at 475. The task before the Court is to analyze Steele's contacts with Florida. Steele's communications with Beattie are irrelevant to this analysis because Rabco independently engaged Beattie, thus necessitating those communications. That Rabco had the authority to subcontract its work is not disputed. Since Rabco chose to engage Beattie, Steele cannot be said to have directed its actions toward Florida by communicating with Beattie after he was engaged by Rabco. As the Magistrate Judge correctly noted, "[t]o hold otherwise would subject Steele Plaza to jurisdiction in any state in which Rabco selected an engineer." (Doc. 37, p. 12) (citing *Helicopteros*, 466 U.S. at 416–17). In short, the Court will not attribute Rabco's independent, discretionary actions to Steele.

Rabco's argument that long-term relationships in the construction business are unique in that outside engineers are akin to employees of the firm engaging them is equally unavailing. Rabco provides no support for this novel proposition, and the Court is aware of no cases supporting such an argument.

Rabco asserts that the Magistrate Judge also erred by "failing to consider Steele's waiver of the selection of the design engineer." (Doc. 45, p. 2). Rabco points to a 2015 email from Steele to Rabco, in which Bruce Bodine says to a Rabco representative, "You would provide the steel building and engineering for it as well as the erection." (Doc. 24-2, p. 45). Steele's purported waiver of the selection of an engineer similarly does not translate to purposeful availment. Rabco notes that "Steele could have required a particular engineer under the terms of the negotiated Contract, but it did not do so." (Doc.

45, p. 7). Assuming this is true, Steele's refusal to direct its conduct *away from Florida* is not tantamount to Steele "purposefully directing" its conduct *toward Florida*.

Accordingly, the Court overrules Rabco's objections relating to Steele's contacts with Beattie and RBE.

### 2.    *Analogy to* Future Technology Today, Inc.

Next, Rabco objects to Magistrate Judge Spaulding's "finding the facts in this case analogous to those in *Future Technology Today, Inc. v. OSF Healthcare Systems*, 218 F.3d 1247 (11th Cir. 2000) (per curiam), despite significant differences." (Doc. 45, p. 2).

In *Future Technology*, the defendant, an Illinois corporation, contracted with the plaintiff, a Florida corporation, to remediate the defendant's computer system in order to obtain year 2000 ("Y2K") compliance. 218 F.3d at 1248. The defendant initially telephoned the plaintiff from Illinois. The plaintiff then sent representatives to Illinois to make a presentation, after which the plaintiff sent the defendant a proposal, and the parties entered into a contract for a Y2K impact analysis. That contract was performed without issue, and was followed by a second contract to perform the actual remediation. The plaintiff signed that contract in Florida, and the defendant signed in Illinois. *Id.*

The defendant was in Illinois during the subsequent dealings (by first class mail, email, fax, and telephone) between the parties. The defendant transferred large amounts of information from Illinois to the plaintiff's workplace in Florida through the Internet. Approximately one year after the remediation contract was executed, the defendant declared the plaintiff to be in default on the contract. The plaintiff invited, and the defendant sent, a group of the defendant's employees to Florida to inspect its work. The defendant's employees stayed for three days. After leaving, it was revealed that they took

with them a roadmap of the plaintiff's remediation work. Both parties claimed ownership of the roadmap, though it was eventually returned to the plaintiff. *Id.*

The plaintiff filed suit in the federal district court in the Southern District of Florida. The district court granted the defendant's motion to dismiss for lack of personal jurisdiction because there were insufficient contacts between the defendant and Florida. The district court supported its holding with the following considerations: (1) the case involved a single telephone call by a buyer of a service; (2) the contract called for work that could have been performed anywhere and the buyer did not care where; (3) the contract was for a one-time service, with the relationship to terminate after completion; (4) no sales took place by phone or internet; (5) the parties negotiated remotely by telephone; (6) the defendant signed the contract in Illinois after several visits to Illinois by the plaintiff; and (7) the defendant did not go to Florida until after the alleged initial breach. *Id.* at 1251.

The Eleventh Circuit affirmed on the grounds established by the district court, attaching the lower court's opinion as an appendix to the decision. *Id.* at 1247.

In the R&R, Magistrate Judge Spaulding found that the Eleventh Circuit's holding in *Future Technology* controls the outcome in this case, and accordingly recommended the Court grant Steele's motion to dismiss for lack of personal jurisdiction. (Doc. 37, p. 14). In its response, Rabco objected to this finding on grounds that Steele's contacts with Florida were different and more pervasive. (Doc. 45, p. 10).

Rabco sought to distinguish the instant case from *Future Technology* based on three alleged differences. The first difference Rabco identifies is that, in *Future Technology*, "[the defendant] reached out to [the plaintiff] in its home state, and

subsequent dealings took place remotely, [whereas] here Steele traveled out of state to make contact with a Florida company for a contract." (Doc. 37, p. 8). Next, Rabco alleges that Steele was much more involved in Rabco's performance of the Contract than the *Future Technology* defendant was in the plaintiff's performance. (*Id.*). Rabco then essentially repeats the first identified difference, averring "[the defendant] found [the plaintiff] at home, but in this case, Steele sought out Rabco in another state." (*Id.*).

The first and third differences identified by Rabco misstate the circumstances under which the disputed contract came into being. Steele did not travel out of state for the express purpose of finding a Florida company with which to contract. Rather, Steele traveled to a trade show in Las Vegas to solicit project bids from contractors located in *any* state. Soliciting bids from contractors based in multiple states in Nevada simply does not constitute purposeful conduct directed toward Florida. If anything, the difference noted by Rabco militates *against* a finding that Steele has sufficient minimum contacts with Florida. While the defendant in *Future Technology* initiated talks by telephoning the plaintiff *in Florida*, Steele first met Rabco outside of Florida, at a trade show in Las Vegas.

The remaining alleged difference is that Steele was substantially more involved in the Contract than the *Future Technology* defendant was in its contract. Rabco asserts that Steele's "numerous telephone calls and emails to persons in Florida demonstrate its purposeful availment of services in Florida . . . ." (Doc. 45, p. 10). As noted above, the Court will not consider Steele's communications with Beattie in assessing Steele's

contacts with Florida. Setting those aside, we are left with Steele's emails[4] and phone calls to Rabco in Florida.

The Court agrees with Magistrate Judge Spaulding's finding that *Future Technology* controls this case. The defendant in both cases entered into a contract while outside of Florida. The parties in both cases negotiated the contract, and communicated after contract formation, remotely. Both contracts were for a one-time service rather than an ongoing business relationship. While some services in both contracts were performed in Florida, neither contract *required* that any work be completed within Florida. As the Eleventh Circuit found in *Future Technology*, these contacts are insufficient to support a finding that minimum contacts are present.

It should be noted that the defendant in *Future Technology* had additional contacts with Florida that are absent in the present case. In *Future Technology*, the contract in dispute was the *second* contract between the parties, whereas there was only one contract in this case. Further, the defendant in *Future Technology* sent representatives to Florida for three days to inspect their work, while Steele never sent representatives to Florida in relation to the Contract. And as noted above, Steele found Rabco at a trade show in Las Vegas, rather than purposely seeking a Florida firm as the defendant did in *Future Technology*. Accordingly, the Court overrules Rabco's objection to the Magistrate Judge's finding that this case is controlled by *Future Technology*.

---

[4] Rabco alleges that there were at least twenty-three such emails. (Doc. 24, p. 5). The emails included several requests to substantively change the project plans, but primarily consisted of requests for updates and clarification on various updates, and complaints about the progress of the project. (Doc. 24-2, pp. 47–89). In view of these emails, the Court agrees with the Magistrate Judge that Rabco's assertion that Steele Plaza "exercised a significant degree of control over the activities of Rabco" appears "somewhat exaggerated." (Doc. 37, p. 5 n.3).

### 3. Remaining Minimum Contacts Arguments

Rabco made several additional arguments in favor of finding that Steele had minimum contacts with Florida. Rabco contends that the Court should refuse to apply *Future Technology*, as the district court for the Southern District of Alabama did in *Owens v. Superfos A/S*, 170 F. Supp. 2d 1188 (S.D. Ala. 2001). That case is inapposite because the nonresident defendant there had more substantial contacts with the forum. *See Owens*, 170 F. Supp. 2d at 1189, 1191–92 (defendant owned a corporation headquartered in the forum state and communicated regularly with forum residents for the purpose of soliciting bids for the sale of said corporation).

Next, Rabco argues that *Future Technology* "is clearly distinguishable because it involved only one telephone call" as compared to the numerous phone calls and emails involved in this case. (Doc. 45, pp. 10–11). Rabco's suggestion that *Future Technology* "involved only one telephone call" is misleading. Although there was only one phone call soliciting business, the parties negotiated the contract by phone and otherwise communicated remotely by mail, email, fax, and phone after the initial call. *Future Tech.*, 218 F.3d at 1248, 1251.

Rabco also cites *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282 (S.D. Fla. 2009), a case where minimum contacts were found based on numerous phone calls and emails precipitating a contract. There, the contract contemplated a relationship lasting approximately five years, and the defendant made at least 188 phone calls to the plaintiff in Florida (in addition to email and facsimile communications) to express its interest in contracting. *Id.* at 1288–89, 1292–93. The contacts between the defendant and

forum in *Exhibit Icons* are more substantial than those between Steele and Florida, so the argument is rejected.

Additionally, Rabco cites *Smith Interior Design Group, Inc. v. Bryant*, No. 08–81038–CIV, 2009 WL 996054 (S.D. Fla. 2009) for the proposition that "performance of design services at the plaintiff's office in Florida has been held to be sufficient to satisfy the due process prong of the jurisdictional analysis." (Doc. 45, p. 11). The *Smith* case, though, is dissimilar. There, the court found that personal jurisdiction over the defendant comported with due process because the subject contract between the parties was for "substantial services to be performed in Florida." *Smith*, 2009 WL 996054, at *5 (quoting *Bohlander v. Robert Dean & Assocs. Yacht Brokerage, Inc.*, 920 So. 2d 1226, 1228 (Fla. 3d DCA 2006) (per curiam)). The court noted that much of the work "could not be performed just anywhere—it had to be done in [the p]laintiff's Florida office where all of its resources were located." *Id.* at *6. There has not been a showing in this case that the bulk of Rabco's work necessarily had to be performed in Florida. As noted above, Rabco had the authority to subcontract its work to third parties as it did with Beattie and with Ben Riehm, its Washington liaison.[5] (Doc. 37, p. 5). Further, the record before the Court contains little more than conclusory allegations of the work Rabco performed in its Florida office. Because of these differences, *Smith* is not persuasive.

Finally, Rabco cites a slew of cases where minimum contacts were found over a defendant who did not "physically enter" the forum state. (Doc. 45, pp. 12–13). None of these cases persuade the Court that minimum contacts are present here. *See Air Prods. & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 551–52 (6th Cir. 2007) (purposeful

---

[5] To that end, Rabco was free to subcontract work to firms located in *or* outside of Florida.

availment present where defendant and plaintiff had an ongoing nine-year business relationship and defendant contacted the plaintiff in the forum state on "several hundred occasions through telephone, email, facsimile, and ordinary mail correspondence for purposes of discussing and placing orders for goods"); *Cable/Home Comm. Corp. v. Network Prods., Inc.*, 902 F.2d 829 (11th Cir. 1990) (involving personal jurisdiction over a defendant in tort); *Mayville v. Glatkowski*, No. 1:08–CV–232–TWT, 2008 WL 2037155, at *1, 5–6 (N.D. Ga. May 8, 2008) (personal jurisdiction premised on (1) defendants' solicitations to forum residents; (2) the long-term business relationship formed by the defendants and forum-resident-plaintiff; and (3) defendants' purchase of newspaper advertisements in the forum state); *Achievers Unlimited, Inc. v. Nutri Herb, Inc.*, 710 So. 2d 716, 718–19 (Fla. 4th DCA 1998) (per curiam) (involving personal jurisdiction over a defendant in tort).

### B.    Rabco's Request for Additional Discovery

In its response to Steele's motion to dismiss, Rabco requests the Court stay its ruling and allow additional discovery if the Court "questions the sufficiency of the evidence of Steele's contacts with Florida." (Doc. 24, p. 20). Rabco repeats this request in its Objection to the R&R. (Doc. 45, p. 16–17). This request is without merit for two reasons. First, requests for affirmative relief should not be raised in a response to a motion. Second, Rabco has had ample time to supplement the record and perform discovery. Therefore, the Court adopts the Magistrate Judge's recommendation that this request be denied.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff, Rabco Corporation's Objection to the R&R (Doc. 45) is **OVERRULED**.

2. Defendant, Steele's Objection to the R&R (Doc. 43) is **OVERRULED**.

3. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 37) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

4. Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 15) is **GRANTED**.

5. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on September 19, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties